**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

Lance Newkirk, Dorothy W. and Christopher G., on behalf of themselves and all those similarly situated,

*Plaintiffs*,

vs.

Frances Pierre, Commissioner of the Suffolk County Department of Social Services, in her official capacity,

*Defendant*.

Case No. CV 19-4283

**DECLARATION OF LINDA R. HASSBERG IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Linda R. Hassberg declares under penalty of perjury:

1. I am a senior attorney of the Empire Justice Center, one of the attorneys for Plaintiffs, and am fully familiar with the facts and proceedings in this action and those referred to in this Declaration.
2. I submit this declaration in support of Plaintiffs' Motion for Class Certification.

## INTRODUCTION

3. Plaintiffs are impoverished persons with disabilities who reside in Suffolk County and are seeking or receiving public benefits and services from the Suffolk County Department of Social Services ("SCDSS"). They bring this class action on behalf of themselves and all similarly situated individuals to challenge the customs, policies, patterns, and practices in administering federal and state benefits programs by Defendant Frances Pierre, Commissioner of SCDSS, that are in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

4. Specifically, Plaintiffs allege that Defendant violated and continues to violate their rights and the rights of putative class members as qualified individuals with disabilities under the ADA and Section 504 by failing to: (1) ensure that individuals with disabilities are sufficiently notified of their rights to request and receive reasonable accommodations; (2) ensure that applicants and recipients are screened for mental health or cognitive disabilities giving rise to the need for reasonable accommodations; (3) ensure that applicants and recipients with "readily apparent" disabilities are provided necessary reasonable accommodations; (4) ensure appropriate procedures and training are in place to guide staff on the processing and granting of reasonable accommodations requests; (5) provide ongoing accommodations to persons with known disabilities who have received prior accommodations; and (6) provide an effective grievance procedure for persons whose reasonable accommodations requests have been denied or ignored.

**DEFINITION OF THE CLASS**

5. Pursuant to the Federal Rules of Civil Procedure, Rule 23(a) and (b), Plaintiffs seek to certify a class consisting of the following members:

> All Suffolk County residents with disabilities who: (1) have applied for or will apply for Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or Temporary Assistance ("TA"), from the Suffolk County Department of Social Services ("SCDSS") since July 1, 2018, and are entitled to reasonable accommodations in the application process to participate in or benefit from these programs; and/or (2) have been found eligible for such programs and are entitled to reasonable accommodations in order to enjoy equal opportunity to participate in or benefit from them.

**PREREQUISITES FOR CLASS CERTIFICATION**

*A. Numerosity*

6. The following documents and sources are submitted to support the numerosity requirement of Rule 23 of the Federal Rules of Civil Procedure.

7. Exhibit A is a New York State Office of Temporary and Disability Assistance ("OTDA") Welfare Management Systems ("WMS") WinR 4113 Report for January 2019. The WinR 4113 Report lists the number of applications for each benefit that SCDSS received in that month. The Report shows that in the month of January 2019, Defendant received 2,745 applications for Temporary Assistance, including emergency assistance, 2,663 applications for SNAP, and 3,255 applications for Medicaid.

8. Exhibit B is the January 2019 WMS WinR 1240 Report that lists the number of active cases for which Defendant is administering benefits and services. In January 2019, Defendant was providing benefits and services in 7,004 TA cases, 53,858 SNAP cases, and 65,385 Medicaid cases.

9. These large numbers represent the norm. Defendant's 2018 Annual Report stated, for example, that an average of 55,978 households received SNAP benefits every month in that year.[1]

10. Recent U.S. census data from the American Community Survey shows that 141,355 individuals with a disability reside in Suffolk County, comprising 9.5% of the county's population.[2] The disabilities of these persons include difficulties with hearing, vision, cognition, ambulation, self-care, and independent living.

11. Persons in Suffolk County who have disabilities and are living in poverty comprise an even more specific core demographic of individuals who are potentially eligible to

---

[1] *2018 Annual Report*, Suffolk County Department of Social Services, https://www.suffolkcountyny.gov/Portals/0/formsdocs/socialservices/2018%20Annual%20Report.pdf at p. 18 (last visited July 24, 2019).

[2] *Selected Social Characteristics in the United States, 2017: 2013-2017 American Community Survey 5-Year Estimates, Suffolk County, N.Y.* (Table DP02), U.S. Census Bureau, https:/factfinder.census.gov/bkmk/table/1.0/en/ACS/17_5YR/DP02/0500000US36103 (last visited July 24, 2019).

receive public benefits from SCDSS. Census data further shows the correlation between disability status and poverty status for Suffolk County residents. As of 2017, of the Suffolk County residents identified as having a disability, 6% were living at less than 50% of the poverty level; 13.3% were living at less than 100% of the poverty level; and 17.2% were living at less than 125% of the poverty level.[3]

12. A study analyzing national data from 2005-2006 confirms that adult TANF (federal TA) and SNAP recipients have disabilities at significantly higher rates than adults in the general population.[4] The study found that 42.9% of adult TANF recipients and 42% of adult SNAP recipients reported mental, physical or emotional problems that prevented or limited their ability to work, which was more than twice the rate of all adults.[5] Moreover, approximately 10% of TANF and SNAP recipients had disabilities that severely limited their ability to care for themselves and engage in routine daily activities, almost five times the percent of all adults with disabilities reporting this measure.[6]

13. SCDSS' Annual Report for 2018 22,819 Medicaid/SSI and 4,882 Medicaid Chronic Care cases in 2018.[7] By statutory definition, SSI recipients are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[3] *Selected Characteristics of People at Specified Levels of Poverty in the Past 12 Months, 2013-2017 American Community Survey 5-Year Estimates, Suffolk County, N.Y.* (Table S1703), U.S. Census Bureau, https://factfinder.census.gov/bkmk/table/1.0/en/ACS/17_5YR/S1703/0500000US36103 (last visited July 24, 2019).

[4] Pamela Loprest & Elaine Maag, *Disabilities Among TANF Recipients: Evidence from the NHIS*, The Urban Institute (2009), https://aspe.hhs.gov/report/disabilities-among-tanf-recipients-evidence-nhis.

[5] *Id.*, at 14.

[6] *Id.*

[7] *2018 Annual Report*, Suffolk County Department of Social Services, https://www.suffolkcountyny.gov/Portals/0/formsdocs/socialservices/2018%20Annual%20Report.pdf at p. 10 (last visited July 24, 2019).

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). SSI recipients are also categorically eligible for SNAP and Medicaid, 42 U.S.C. §1383c, and could receive state authorized emergency assistance benefits in qualifying circumstances.

14. Although Defendant does not maintain comprehensive data or documentation that specifically identifies which applicants and recipients of its benefits and services have disabilities, based on SCDSS reports and census data, it is reasonable to estimate that the proposed class includes thousands of individuals.

*B. Common Questions of Law and Fact*

15. As explained more fully in Plaintiffs' Memorandum of Law, common questions of both law and fact predominate in this class action complaint.

16. The following documents are submitted to support the commonality requirement of Rule 23 of the Federal Rules of Civil Procedure:

   a. Sworn statements by named Plaintiffs Lance Newkirk, Christopher G., and Dorothy W. are attached to this Declaration as Exhibits C, E, and F, respectively. These statements describe the experiences of the named Plaintiffs in attempting to get assistance and accommodations from SCDSS to enable them to complete applications, access services, recertify for benefits, and/or meet other requirements necessary to maintain their benefits. In their sworn statements, all Plaintiffs describe numerous and repeated actions or omissions by SCDSS employees that caused them to lose or be denied benefits or services or caused some other harm, often on multiple occasions, thereby violating their rights under

ADA and Section 504. *See* Affidavit of Lance Newkirk (Exhibit C); Affidavit of Christopher G. (Exhibit E); and Declaration of Dorothy W. (Exhibit F).

b. Sworn statements from five proposed class members and former recipients of SCDSS benefits and services are attached to this Declaration as Exhibits D, G, H, I, and J. These statements detail experiences similar to those of the named Plaintiffs. Like the named Plaintiffs, the proposed class members describe multiple unsuccessful attempts to get assistance and accommodations from SCDSS in order to complete applications, access services, recertify for benefits, and/or meet other requirements necessary to maintain benefits. Similar to the named Plaintiffs, the proposed class members were subjected to actions and omissions by SCDSS, as administered by the Defendant, which caused them to lose or be denied benefits and services to which they were entitled and violated their rights under the ADA and/or Section 504. *See* Declaration of Meesha Johnson, (Exhibit D), Affidavit of Charles J. (Exhibit G); Affidavit of Tiffany S. (Exhibit H); Affidavit of Deborah K. (Exhibit I); and Declaration of Nicole S. (Exhibit J).

17. The statements accompanying Plaintiffs' Motion reveal the common factual bases for the Plaintiffs' allegations. For each sworn statement, the named Plaintiff or proposed class member is a qualified individual with a disability who either sought a reasonable accommodation or for whom the need for reasonable accommodation was known by Defendant in order for the individual to access or maintain an SCDSS benefit. For example, all Plaintiffs and class members state that Defendant repeatedly failed to inform them of their right to request reasonable accommodations, routinely failed to respond in

writing to their requests for reasonable accommodations, and repeatedly failed to inform them that they have the right to appeal denials of their requests. Newkirk. Aff. ¶¶ 13, 28, 31, 44-47, 54, 58, 68, 71; Johnson. Decl. ¶¶ 4, 6, 11, 14, 26-27; C.G. Aff. ¶¶ 17, 20-21, 27, 47, 49; N.S. Decl. ¶¶ 9-15, 21, 25, 27-28; D.K. Aff. ¶¶ 13-15, 19, 23; T.S. Aff. ¶¶ 7, 23-24; C.J. Aff. ¶¶ 7-9, 16, 22. For each named Plaintiff and proposed class member, Defendant failed to provide the accommodation or failed to maintain an accommodation that had been previously granted. Newkirk. Aff. ¶¶ 25-30, 40-46, 68, 70; Johnson. Decl. ¶¶ 4-6, 10, 12, 17, 19-27, 29; C.G. Aff. ¶ 7-9, 16-18, 20-21, 24, 26-27, 34-35, 39; J.C. Aff. ¶¶ 7-10, 12-18, 20, 23; N.S. Decl. ¶¶ 19, 21; T.S. Aff. ¶¶ 17-18; C.J. Aff. ¶¶ 12, 22.

18. The statements of the named Plaintiffs and proposed class members also illustrate the systemic nature of Defendant's failure to provide the protections mandated by federal law to applicants and recipients with disabilities. Specifically, the facts of each of the named Plaintiffs exemplify the obstacles faced by applicants and recipients with disabilities in attempting to access public benefits through SCDSS.

    a. Tiffany S. is a member of the proposed class with psychiatric disabilities that impair her ability to concentrate, remember instructions, and perform complex tasks on her own. Her affidavit is appended as Exhibit H. T. Smith Aff. ¶¶ 3, 5. She lives in Bay Shore, New York in Suffolk County with her husband and six children. *Id.* ¶ 1. Ms. Smith, her husband, and their six children rely on TA, SNAP, and Medicaid benefits from SCDSS. *Id.* ¶ 2. Despite being informed of Ms. Smith's condition, which renders her unable to perform in a high-stress work environment, SCDSS gave her work assignments as part of her benefits program requirements she was unable to complete and sanctioned her for failing them. *Id.*

¶ 5-6, 17. SCDSS never informed Ms. Smith that she had a right to request reasonable accommodation under the ADA, nor that she had a right to challenge a determination in response to a request via the ADA grievance procedure. *Id.* ¶ 24. When she did request accommodations with the assistance of an advocate, she was summarily denied without notice. It was only with the help of an advocate that Tiffany's benefits were reinstated and SCDSS exempted her from the work requirements. *Id.* ¶¶ 14-16, 20-21

b. Charles J. is a member of the proposed class with hearing loss that impairs his ability to speak and comprehend oral communications. His affidavit is appended as Exhibit G. Mr. J receives SNAP and Medicaid benefits. C. J. Aff. ¶¶ 1-2. Although Mr. J has informed SCDSS of his hearing impairment and his inability to communicate over the phone and has requested that SCDSS communicate with him in writing, SCDSS has repeatedly failed to provide this accommodation. *Id.* ¶¶ 6-15, 22. As a result, Mr. J's recertifications have been delayed and he runs the risk of being deprived of access to his benefits each time he has to recertify his eligibility for them. *Id.*

c. Deborah K. and her son have received Medicaid and SNAP benefits since 2017 and were recipients of TA and Temporary Housing Assistance until they moved to a rental home in Mastic. Her affidavit is appended as Exhibit I. D.K. Aff. ¶ 10. Ms. K. suffers from cancer of the throat that has spread to her kidneys, rheumatoid and psoriatic arthritis, glaucoma, diverticulitis, Post-Traumatic Stress Syndrome (PTSD) and Obsessive Compulsive Disorder. *Id.* ¶ 4. The cancer treatments have caused memory loss and a compromised immune system. *Id.*

Ms. K walks with a cane, cannot climb stairs, and needs assistance in many daily living tasks such as dressing, preparing meals and getting in and out of bed. *Id.* ¶ 5. Due to vision problems and instability, she must be accompanied when she leaves the house. *Id.* Her sole income is Supplemental Security Income (SSI) and she receives care coordination services from Family Services League (FSL). *Id.* ¶¶ 6-7. When Ms. K and her son lost their home in April 2018, they applied and were approved for THA. *Id.* ¶ 10. In the six months that the family lived in temporary, they were forced to move several times. *Id.* ¶¶ 17-20, 23. Each time, they had to go to a DSS Center and endure a long wait in crowded conditions despite DSS's knowledge of Ms. K's multiple debilitating illnesses and medically documented need to avoid exposure to other people and public facilities. *Id.* ¶ 21. DSS failed repeatedly to inform her of her right to reasonable accommodations and to ensure that those accommodations were maintained once approved. *Id.* ¶¶ 12-15, 18-23.

d. Nicole S., was a recipient of TA and THA benefits from SCDSS from January, 2018 to March, 2019. Her declaration is appended as Exhibit J. N.S. Decl, ¶¶ 1, 6, 33. Ms. S. has an autoimmune condition and multiple psychiatric conditions that require her to avoid unnecessary contact with others and to live by herself. *Id.* ¶¶ 4-5. Although Ms. S. provided SCDSS with evidence of her autoimmune and psychiatric conditions and letters from her doctors describing why she could not live in shared housing when she first applied for THA, SCDSS denied Ms. S. reasonable accommodations numerous times and forced her at times to live in shelters with shared dormitories and bathrooms, contrary to the documented

instructions from her doctor. *Id.* ¶¶ 7-11. Even when SCDSS provided Ms. S. with isolated housing, SCDSS gave away her shelter spot to another individual and forced her to return to a shelter with shared facilities after she was briefly hospitalized for two days for surgery. *Id.* ¶ 13-24. At the time of these denials, SCDSS had in its possession records of Ms. S.'s disabilities and modifications necessary to accommodate her, based on prior determinations of eligibility in connection with her receipt of Medicaid and SNAP benefits. *Id.* ¶¶ 7, 20, 22. SCDSS failed to inform Ms. S. that she had the right to request reasonable accommodations under the ADA. *Id.* ¶ 29. During those times that Ms. S. attempted to request reasonable accommodation and challenge the denial of her requests, SCDSS also failed to provide her with a written denial of a request for reasonable accommodation, and failed to inform Ms. S. of her right to challenge the denial through the ADA grievance procedure. *Id.*

e. Meesha Johnson is a member of the proposed class who is blind and requires dialysis due to a kidney transplant. Her declaration is appended as Exhibit D. M.J. Decl. ¶ 3. She and her daughter receive Medicaid and SNAP, for which she must recertify every twelve months. *Id.* ¶¶ 1-2, 4. Since 2016, she has repeated requested that SCDSS to provide her with recertification applications electronically, so she can read them through her computer program, or to conduct the recertification by telephone. SCDSS has repeated sent her paper applications in the mail despite these requests and she has experiences lapses of benefits as a result. *Id* ¶¶ 4-5, 10, 12-25. 30-31.

*C. Fair and Adequate Representation of the Class*

19. Class counsel in this matter are sufficiently experienced and qualified to proceed in this

litigation without prejudicing the interests of the putative class members. The proposed class is represented by attorneys from the Empire Justice Center (Linda Hassberg, Saima Akhtar) and the National Center for Law and Economic Justice (Marc Cohan, Greg Bass, Travis England, Jen Rasay). Both offices have experience in matters of constitutional law, the Americans with Disabilities Act, class action litigation, and the law governing public benefits. Plaintiffs' counsel has litigated dozens of class actions in this District and other courts within this Circuit. The National Center for Law and Economic Justice has previously handled other cases where the nature of the disability-related claims was similar to those raised here.

20. The named Plaintiffs can adequately present the interests of the proposed class members. The claims of the named Plaintiffs and the proposed class arise out of the same illegal conduct by Defendant.

*D. Ascertainability of the Class Members*

21. Defendant will be able to ascertain the class members of the proposed class.

22. Plaintiffs seek to certify a class of benefits applicants and recipients who disabilities and who have applied for or will apply for benefits and services administered by Defendant since July 1, 2018.

23. Set for the below is a description of the process by which Defendant can ascertain whether an applicant or recipient is a class member.

24. Defendant first learns whether an applicant or household member has a disability at the time of an initial application.

25. Defendant uses the Common Application Form, but applications for specific benefits such as SNAP or Medicaid may also be utilized.

26. All application forms for federal benefits include multiple questions regarding disability of the applicant or household member that applicants are required to answer at the time of application. The OTDA form[8] "New York State Application for Certain Benefits and Services" asks (1) at page 8, whether the applicant receives SSI or "NYS Disability" benefits and (2) at page 14, whether the applicant or anyone living in the household is "blind, sick or disabled," is "a child with a developmental disability," "[i]s or was drug or alcohol dependent," "[i]s on SSI or has ever applied for SSI," "[h]as not been able to work for at least 12 months because of a disability or illness," and "[h]as daily activity limited because of a disability or illness that has lasted or will last at least 12 months."[9] The form also asks, at page 11: "Do you or any other adult who lives with you have any medical conditions that limit the ability to work or the type of work that can be performed?"[10] Similarly, the OTDA form "Supplemental Nutrition Assistance Program (SNAP) Application/Recertification," which is used for SNAP applications only, asks, at page 4: "Are you, and/or anyone living with you, disabled or at least age 60?" [11]

27. Eligibility information contained in the client application is entered into the computerized New York State Welfare Management Systems ("WMS"), from which Defendant may generate data reports as well as information specific to individual applicants and

---

[8] Pursuant to state law, OTDA is mandated to provide statewide benefits eligibility forms for use by local social services districts such as SCDSS. *See* N.Y. Comp. Codes R. & Regs. tit. 18 § 320.1 ("Local social services agencies shall use forms required by and furnished by the department unless local equivalents thereof are permitted and approved."); *see also*, NY Soc. Serv. Law § 355(2); N.Y. Comp. Codes R. & Regs. tit. 18 § 350.1(b).

[9] Office of Temporary and Disability Assistance, "New York State Application for Certain Benefits and Services," LDSS-2921 (Rev. 7/16), http://otda.ny.gov/programs/applications/2921.pdf.

[10] *Id.*

[11] Office of Temporary and Disability Assistance, "Supplemental Nutrition Assistance Program (SNAP) Application/Recertification," LDSS-4826 (Rev. 2/18), http://otda.ny.gov/programs/applications/4826.pdf.

recipients.

28. In addition to the application form, Defendant may have information about the disability of the applicant or other household member in the applicant's case file from previous applications and documentation that was furnished previously. Supplementary information is also provided during the application interview and entered into the electronic client record.

29. Defendant can ascertain some of the proposed class members from data contained in WMS.

30. WMS contains a record of those class members who have previously applied for or received benefits and whose household received disability-based income. This disability-based income includes but is not limited to Disabled Veteran's Benefits, New York State Disability, Social Security-Disability, Supplemental Security Income, Worker's Compensation, and Black Lung benefits.

31. Additionally, SNAP cases in WMS have a specific code that is entered by the SCDSS worker to indicate whether the household contains an aged or disabled person, within the federal SNAP program definition, as this is relevant to determining eligibility levels.

32. Moreover, Defendant is required by state and federal law to maintain information and documentation in the SCDSS case files that would contain information on disability of applicants and recipients.[12]

33. The SNAP and TA programs have work requirements. Individuals with disabilities that limit or prevent compliance with these work requirements must submit medical documentation and/or undergo an independent medical evaluation to determine whether

[12] *See* 7 C.F.R. § 272.1(f); 18 NYCRR §§ 354.1, 354.2.

they are exempt from the requirement.[13] That documentation is kept in the individual's SCDSS case file.

34. Medicaid applicants with disabilities are eligible for benefits at higher income levels if their disabilities are documented.[14]

35. Applicants for THA must be evaluated if SCDSS suspects a mental or physical impairment that is a contributing factor to homelessness.[15] Applicants and recipients for benefits such as THA will usually submit some type of medical information or other proof of disability in support of requests for accommodations. SCDSS maintains those documents in the case files.

36. Upon information and belief, the computer system used by SCDSS that maintains the case files of benefits applicants and recipients permits notations to the file indicating that the case file includes disability information.

37. Therefore, Defendant has several means of ascertaining the members of the class that Plaintiffs seek to certify.

Dated: August 6, 2019
Central Islip, New York

*/s/ Linda Hassberg*

Linda Hassberg

[13] *See* 7 U.S.C. § 2015(d)(1); N.Y. Social Services Law § 332-b; 7 C.F.R. § 273.7(b)(1)(ii); 18 N.Y.C.R.R. §§ 385.2(b)-(d), 385.3(a)(5)).

[14] *See generally* N.Y. Social Services Law § 363-b; 18 N.Y.C.R.R. Part 360-5.

[15] *See* OTDA Administrative Directive 16 ADM-11, Temporary Housing Assistance: Consolidation and Clarification of Policy, available at http://otda.ny.gov/policy/directives/2016/ADM/16-ADM-11.pdf.