# EXHIBIT E

PLAINTIFF AFFIDAVIT

I, Christopher G. declare under penalty of perjury as follows:

1. I have lived in Suffolk County my whole life. I currently live in East Patchogue. I am single.
2. I receive cash assistance (TA), food stamps (SNAP), and Medicaid (MA) from the Suffolk County Department of Social Services (DSS).
3. I have problems with my feet and back that make it difficult for me to walk. I also believe that I have had learning disabilities since I was a child and get very frustrated when I don't understand things. I also have problems with drinking and have gone for treatment in the past.
4. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy individuals with disabilities living in Suffolk County.
5. I submit this affidavit in support of Plaintiffs' Class Action Complaint challenging the failure of Defendant Commissioner of the Suffolk County DSS to provide reasonable accommodations pursuant to the Americans with Disabilities Act ("ADA") to give applicants and recipients with disabilities equitable access to the benefits and programs he administers. My lawyers have advised me that these are central issues in this lawsuit.
6. I also submit this affidavit in support of Plaintiffs' Motion to Proceed Anonymously.
7. I have received benefits from DSS on and off for many years. Each time I reapplied for benefits, I had to fill out an application. I always have trouble filling out the application because I don't understand all the questions or have trouble writing the answers correctly. Sometimes, friends would help me. Other times, the DSS worker who interviewed me

would help me fill it out.

8. DSS sends notices to me that I have trouble reading and understanding. I can read the words, but have trouble absorbing the information and sometimes get the meaning wrong. I have told DSS workers many times that I have trouble understanding what the notices say, but they keep sending them to me anyway.

9. I used to call DSS when I received a letter or notice that I did not fully understand to ask what it was about. However, I was usually put on hold for a long time, or the worker hung up on me, so eventually I gave up on calling.

10. I can usually read a date and place in a notice and I try to figure out from that what DSS wants to me to do. I have never been able to understand the whole notice and often find out that I misunderstood.

11. For example, I have gone into DSS many times in the past because I thought a letter was telling me that I had to go there, only to find out when I got to the center that I didn't have to come in.

12. I received a notice in November 2017 that DSS was stopping my Temporary Assistance for 150 days because I did not turn in job searches. I had always submitted my list of job searches to the Suffolk Department of Labor (DOL) and did not fully understand what DSS thought the problem was. I showed the notice to my sister and she explained that DSS thought that the information I had submitted was insufficient. I told my sister that I thought I had done what they asked for, and did not not understand why it was insufficient..

13. In the past, some of the job logs that I had handed in to DOL were returned to me crossed out, but I didn't understand why.

14. My sister helped me ask for a Fair Hearing to challenge the sanction. .

15. I asked for the Fair Hearing because I was afraid I would become homeless if DSS cut off my benefits.

16. My sister went with me to the Fair Hearing in February 2018. I brought with me a letter from Dr. Susan Phelan, from the treatment center I was attending. The letter explained that I have depression, anxiety, and learning disabilities that make it hard for me to complete assignments that involve reading and writing without assistance.

17. I told the hearing officer that I wanted an adjournment so I could have a lawyer represent me. The hearing officer asked me some questions and we left.

18. I met with an attorney at Nassau-Suffolk Law Services Committee, Inc. (NSLS) the following week. She looked at the Fair Hearing notice I had brought with me and looked up the hearing on the computer. She found out that I had lost my fair hearing even though I had asked for an adjournment. She also said that the Fair Hearing decision did not mention Dr. Phelan's letter.

19. My attorney told me she would contact DSS about my case. She then called me to let me know that DSS agreed not to sanction me, so we withdrew the hearing request.

20. My attorney also sent DSS a request for a reasonable accommodation to have me tested for learning disabilities and to have someone from DSS explain notices and letters to me from now on. She also requested that I receive help in doing job searches and using the computer.

21. My attorney later told me that DSS never responded to the request.

22. In May, 2018, I received a notice from DSS stating that I would be sanctioned because I failed to go to a DOL appointment.. I got this notice even though I had given DSS copies

of letters stating that I had medical appointments to explain why I couldn't make it to DOL that day.

24. 23. I showed my sister the notice and told her that I had let DOL know that I couldn't make the appointment that day.. My sister and I decided that I should request a fair hearing and she helped me make the request I contacted my attorney at NSLS and she said that she would represent me at the fair hearing and would ask DSS for a copy of my file to see if DSS has done anything with request for accommodations we submitted in March. DSS did not have the request and asked my attorney for another copy.

25. My attorney let me know that DSS decided not to sanction me after reviewing the request that she had sent again.

26. DSS also gave me an appointment with Industrial Medical Association (IMA). I went to IMA to be evaluated at the end of June and they decided that I was exempt from the work requirement for six months.

27. My 60th birthday was in February. I no longer have a work requirement because of my age and don't have to deal with DOL or job searches any more. Other than sending me to IMA for evaluation, my lawyer and I never received a response in writing from DSS to the reasonable accommodation request my attorney sent them. The request specifically stated that I need help to understand written notices and instructions, but no one from DSS has explained to me how they will provide this assistance. I still receive notices and letters from DSS that I do not understand and have to ask my sister or others for help.

28. I still have to go to DSS sometimes. When I am there, the DSS worker will read a notice to me and ask if I understand. However, most of the time, I get notices in the mail and have no one to explain to me what they mean.

29. In the beginning of April, 2019, I received a notice saying that my benefits would be cut off because I failed to show up for some appointment at DSS. I did not know what the appointment was for.

30. A friend had asked me to work for him for one day. It was the same day as the appointment. I called DSS the week before and told the person who answered the phone that I could not make my DSS appointment the following Monday because I had work for that one day only. I don't remember how they responded on the telephone.

31. I worked for my friend on the day of the appointment. The following day, I went to DSS because I had learned that you could go the following day if you missed an appointment.

32. When I got to DSS, I was given a printed form and was told to give it to my friend to fill out about the work I had done and how much I got paid.

33. My friend refused to fill out the form.

34. I went back to DSS and filled out a Speedy Request asking to see my worker so I could explain to him that my friend would not fill out the form.

35. I handed in the Speedy Request at the window. The DSS worker stamped it and said, "You're done." I asked if I was going to be able to talk to my worker and the woman at the window just closed the blinds, so I left the DSS Center.

36. The next thing I knew, I got a notice saying that my benefits would be cut off.

37. I asked for a fair hearing, but did not realize that I should have asked within 10 days in order to keep my benefits. My lawyer later informed me that the notice included the information about the 10 days, but I did not understand that when I read it.

38. I went to the hearing alone because my sister was away. I explained as best I could what had happened. No one at the hearing mentioned that I had a learning disability that made

it difficult for me to understand notices and instructions.

39. I called my attorney at NSLS to tell her that I had gone to a Fair Hearing on my own to challenge the notice that my benefits were cut off. She asked me if DSS had helped me to get the employment form completed . I said, "no" and told her what had happened when I went to DSS and filled out the Speedy Request.

40. My attorney contacted DSS to find out if they would reinstate my TA benefits. DSS replied that I had lost the Fair Hearing, but that I should reapply.

41. I did not understand that I could reapply for TA right after I received the notice that DSS was closing my case because when my case had been closed in the past, there was a sanction that prevented me from reapplying for a certain number of days.

42. After my attorney told me to reapply, I went to DSS and submitted an application on May 10, 2019. At the time I submitted the application, I had no money and no SNAP amount on my card. I had not been able to pay my rent for May and was worried that I would be evicted from the room I am renting and become homeless.

43. At the Center, I was given an application and told to fill it out as best I could, which I did.

44. I then went to speak to a worker in the back. She went through the application and asked me some questions. She told me that I could get SNAP that day and she would give me a rent voucher so I could pay my rent.

45. I believe that I will start receiving TA again soon. Without the help of my attorney, I would not have known that I could reapply for TA right away and may have lost my housing.

46. I also still worry that I could lose my benefits again if I receive a notice that I don't understand or fail to follow a DSS requirement.

47. I was never told that by DSS that I had a right to request an accommodation if I needed one because of my disabilities.

48. DSS never told me that I could file an ADA complaint if I did not get needed accommodations.

49. DSS caused me harm and hardship by not providing me with notice information in a way that I could understand it. I have lost benefits for months at a time for failing to comply with work requirements.

50. It was only when NSLS helped me that DSS agreed not to impose sanctions or agreed to reinstatement my benefits.

51. As long as DSS continues to ignore my disabilities, I fear that I may lose benefits again if I don't follow up on a letter or notice that I don't understand.

Dated: May 17, 2019
Coram, New York,

Christopher G.

Sworn before me on this 17th day of May, 2019,

Notary Public

LINDA R. HASSBERG
Notary Public, State of New York
No. 02HA6182919
Qualified in Suffolk County
Commission Expires March 10, 20__