# EXHIBIT F

# PLAINTIFF DECLARATION

I, Dorothy W., declare under penalty of perjury as follows:

1. I am a resident of Suffolk County and live alone.
2. I have applied for and receive Medicaid benefits from the Suffolk County Department of Social Services ("DSS").
3. I am willing to serve as a class representative in this lawsuit on behalf of myself and other needy individuals with disabilities living in Suffolk County.
4. I submit this affidavit in support of Plaintiffs' Class Action Complaint challenging the failure of Defendant Commissioner Frances Pierre of the Suffolk County DSS to provide reasonable accommodations pursuant to the Americans with Disabilities Act ("ADA") to give applicants and recipients with disabilities equitable access to the benefits and programs she administers. My lawyers have advised me that these are central issues in this lawsuit.
5. I have spastic diplegic cerebral palsy—a pediatric neuromuscular disorder. I have three individualized visual impairments. I experience myopia, esotropia as well as a marked visual perceptual disorder. My severe lower extremity limitations require that I have use of a motorized wheelchair. Myoclonic tremors in my right and left hands make it difficult for me to write consistently, legibly, and within the lines of printed forms. As a result, I often rely on a personal assistant to act as my bodily conduit for the tasks that I cannot perform on my own.

6. Due to my visual impairments, I can only read documents and fill out forms that have large print, preferably sent electronically. I use a screen magnifier program on my computer that can enlarge documents so they are readable. Whenever possible, I also use a voice-activated program for writing instead of typing. If I do not have access to electronic documents or documents with both large print and adequate spacing, I require a scribe to read questions to me and write down my answers in order to fill out forms.

7. I am a practicing attorney but experienced a sharp decline in income in 2017 due to medical complications. In the Fall of 2018, I called DSS to apply for the Medicaid Buy-In Program for Working Persons with Disabilities (MBI), a medical insurance benefit available to low-income people with disabilities who are working.

8. In response to my request, DSS sent me a paper application in the mail.

9. I called DSS on October 6, 2018, explained my disability and stated that I needed documents and forms that are in large print, preferably sent electronically, or a scribe in order to complete the application. As an attorney and person with a disability, I am very familiar with the rights provided by the Americans with Disabilities Act ("Act") and understood that DSS should grant me a reasonable accommodation if I needed it to access public benefits.

10. However, the DSS worker did not respond to my request, but stated that this is the way that the DSS works with regard to these applications. I got off the phone call without being provided any further assistance.

11. I decided not to pursue the application at that time because of the difficulty in getting assistance.

12. However, by February 2019 my earnings had not increased and I could not afford health insurance. I called the Suffolk County Attorney's Office to explain my frustration with my past attempt to apply for MBI and was told that reasonable accommodations would be provided to me.
13. I was contacted by DSS for an appointment at the DSS Smithtown Center where I believed that I had a face to face meeting arranged for me so that my paperwork could be filled out in person, with assistance. I had been to the Smithtown Center and knew that I would not be able to navigate in that center due to my visual perceptual disorder.
14. DSS then arranged a meeting for me in the Riverhead Center on February 28, 2019.
15. I met with a DSS worker who reviewed the information that I had brought with me, asked me questions, and filled out the application for MBI, which she then had me sign. However, it did not appear to me that she was writing down my answers verbatim, as a transcriber would. I agreed to sign the application even though I could not read what the DSS worker had written.
16. The application was filled out based upon the materials that I had brought with me that day. However, I was never advised by DSS as to what materials I had to bring with me in order to complete the application.
17. I next received a letter from DSS stating that further information was needed to complete my application.
18. After I received the letter, I called DSS in Riverhead to explain that I had not been informed prior to my face to face interview with DSS of the information that I needed to bring with me to complete the application. I again stated that I needed notices and forms in large print to be able to respond to DSS's request for more information due to my

disabilities. The person on the telephone did not appear to have any knowledge about the paperwork that still needed to be submitted or my need for accommodations. However, she informed me that my application was being transferred to a Ms. Clarke in Ronkonkoma to determine eligibility.

19. I next received a notice dated April 11, 2019, stating that my MBI application was denied as a result of a "lack of information".

20. I requested a Fair Hearing to challenge the denial, because I believe that I was eligible for the benefit at the time and would have successfully completed the application if I had received the assistance and reasonable accommodations from DSS that I had originally requested.

21. After I was notified that my Fair Hearing would take place on June 26, 2019, I wrote to DSS on June 14, 2019, to ask to examine my Case Record. In the letter, I specifically requested (1) copies of the documents to be presented at the hearing in support of the Agency's position, (2) a summary of the case and the agency's position, if one has been prepared, (3) any and all records, notes, and or internal emails related to my application and eligibility for the period from February 26, 2019 and May 30, 2019, (4) a list of employees working in the Medicaid unit in the Riverhead Center on February 28, 2019, the date my initial application was accepted, and (5) copies of any written communications, records or notes regarding my ongoing requests to the Agency for accommodations in connection with my application for benefits.

22. I also asked that these documents be sent to me in large print or electronic format as a reasonable accommodation.

23. I received a case summary in response to my June 14 th request. However, not all of the pages were in a large print as is necessary. I also did not receive any documents electronically whereby the screen magnifier application on my computer would have been able to magnify the document appropriately for my use. I was told that if I wanted to review other documents in my DSS file, I should make an appointment.

24. I requested an appointment at a time that my representative and I were both available. We arrived at the center at 2:00 pm and were taken to a room where we could view the file. However, we were not able to review most of the documents in the file because they were not in a format that I could read. In addition, three DSS workers were sitting in the room with us and talking to us while we were trying to review the file, so we did not complete the review.

25. In addition to requesting a Fair Hearing, I also decided to reapply for Medicaid. I submitted a second application on May 24, 2019.

26. On May 30, 2019, DSS again requested that I provide further information to complete my application. The due date to provide this documentation was June 17, 2019.

27. My representative who was helping me to gather this information and I realized that we would need more time to provide detailed financial information about my current earnings as a self-employed attorney, including income received, and amounts billed. On June 12, I faxed a letter to Ms. Clarke requesting an extension of time to July 8 th.

28. In the same letter, I also requested collateral assistance to help me complete the application because I was not certain of what exactly I was being asked to provide.

29. On June 22, 2019, I received a letter from DSS that extended my time to submit additional documents related to my second application for the MBI program to June 24,

2019.

30. I was unable to submit the information by the due date.

31. I attended the Fair Hearing on June 26, 2019, with my representative and a personal assistant. We brought with us a box of documents that responded to requests by DSS from both applications.

32. At the Hearing, we ended up discussing what further evidence of income was needed for the second application, even though the hearing was supposed to be about the first application that was denied. I reluctantly agreed to adjourn the Hearing and to submit further documents to DSS in an attempt to get the Medicaid benefit as soon as possible.

33. After the hearing, I submitted additional documentation to DSS about my income and assets.

34. I received a notice from DSS dated July 9, 2019, stating that I was denied Medicaid. However, I also received a communication from the entitlements representative of my care coordination agency, stating that she had accessed the NYS computerized benefits system and it showed that I was approved for Medicaid.

35. My advocate from NSLS then received a notice from DSS dated July 17, 2019, stating that I had been approved for MBI Medicaid. She emailed the notice to me. I received a Medicaid card in the mail on July 22, 2019. I am now completing the submissions that the New York State Office of People With Developmental Disabilities needs to approve me for the Community and Home-Based Waiver Program, which will permit me to continue to live and work in my home with adequate assistance. I have suffered harm and hardship due to DSS's refusal to honor and follow through on my requests for reasonable accommodations. I believe that I would have started receiving MBI Medicaid sooner if

DSS had complied with the ADA. I incurred considerable medical expenses and had limited income with which to pay for medical care while my application was pending.Further, DSS's failure to provide ADA reasonable accommodation delayed my efforts to seek approval for the Home and Community Based Waiver Program that I need to continue to be able to afford to stay in my home and hire a community habilitation worker to assist me with daily life activities. I have been very limited in the work I can do and have not been able to participate in community activities without this assistance and feared that I would lose my home and have to move to a more restrictive setting.

36. I am worried that the struggle I had to complete my Medicaid application successfully may happen again when I have to recertify for benefits. I never received any acknowledgement from DSS that I was entitled to reasonable accommodations due to my disabilities nor was I notified that the accommodations I requested would be provided in the future.

37. I wish to proceed anonymously as a plaintiff in the class action. I am a professional and an attorney in this community and fear an adverse effect on my professional reputation and ability to work if details of the very personal circumstances that I am disclosing were made public .

Dated: July 24, 2019
Central Islip, New York,

Dorothy W.

Dorothy W.