# EXHIBIT I

# AFFIDAVIT

I, Deborah K., declare under penalty of perjury as follows:

1. I am a resident of Suffolk County. I live in Mastic with my son, who is also my home health aide.
2. I submit this affidavit in support of Plaintiffs' Class Action Complaint challenging the failure of Defendant Dennis Nowak, Acting Commissioner of the Suffolk County DSS to provide reasonable accommodations to give applicants and recipients with disabilities equitable access to the benefits and programs he administers. I wish to submit this affidavit anonymously.
3. I further submit this affidavit in support of Plaintiffs' Motions to for Class Certification and a Preliminary Injunction.
4. I have cancer of the throat that has spread to my kidneys. I also have rheumatoid and psoriatic arthritis, glaucoma, diverticulitis, Posttraumatic Stress Syndrome (PTSD) and Obsessive Compulsive Disorder. The cancer treatments have caused memory loss and I have a compromised immune system.
5. I can only walk with a cane, cannot climb stairs, and need assistance in many daily living tasks such as dressing, preparing meals and getting in and out of bed. I can attend to hygienic needs independently, but will only shower when someone is close by in case I fall. Due to vision problems and instability, I should be accompanied when I go out for doctor visits and other appointments.
6. My sole income is Supplemental Security Income (SSI).
7. My multiple medical conditions qualify me for care coordination services, which I

receive from Family Services League (FSL).

8. My son and I applied and were approved for Medicaid from the Suffolk County Department of Social Services (DSS) in 2017 and continue to receive that benefit.

9. At the end of 2017, my son and I had to leave the apartment we were renting and we became homeless. We moved in temporarily with some friends.

10. On April 23, 2018, when our friends could no longer accommodate us, my son and I went to the Smithtown DSS Center to apply for Temporary Housing Assistance (THA).

11. I asked my FSL care coordinator to accompany us to the center because I knew I would have difficulty with the application process because of my memory issues and inability to tolerate crowded and stressful situations well.

12. On the day we applied for THA, I brought with me a letter from my doctor stating that I had multiple medical problems and would benefit from being in a motel with my son, who is my caregiver.

13. My FSL care coordinator helped me submit this letter from my doctor along with a "Speedy" request for a reasonable accommodation of a motel placement that was physically accessible. The request detailed my medical conditions and stated that such placement was necessary for my safety and continuity of care.

14. After waiting for several hours, my son and I were informed that DSS approved a THA placement for him, but denied the benefit to me because there was no placement that could accommodate my needs.

15. I did not receive a written denial of my reasonable accommodation request, nor was I informed that I had the right to appeal the denial.

16. My care coordinator immediately called her supervisor and also called an attorney at

Nassau Suffolk Law Services (NSLS). Both of them told us to refuse to leave the Center until we got a THA placement together. The NSLS attorney told us that she would contact DSS about getting me placed with my son.

17. At 7 p.m. that evening, we were told that DSS had found a placement for us. The shelter was more than half a mile from the center and we were forced to walk there in the dark where there were no sidewalks. I was exhausted and using a walker and leg brace to walk at the time because I was still recovering from surgery. It took us a long time to get to the family shelter. DSS did not offer transportation to us even though it was obvious that I had great difficulty walking.

18. We lived at the family shelter for nearly a month. We received no assistance with finding permanent housing or to address any other needs while we were there. When my care coordinator asked why no services were being provided, the manager of the shelter told us that DSS had not authorized any services for us.

19. After a month, we were told to return to DSS. When we arrived at the Center, we were told that we were being moved to a shelter in Brentwood. From there, we were moved again to a shelter in Patchogue. We were never given any explanation for these moves.

20. While I was living in the Brentwood shelter, I was hospitalized for almost a week and underwent surgery. I contacted DSS from the hospital prior to discharge and was told that if I did not return to the shelter immediately, my son and I would lose our placement. Fortunately, the NSLS attorney intervened on our behalf and I was able to return to the shelter from the hospital, but I had to leave sooner that my doctors had advised me to do

21. Each time we had to return to DSS to get a different THA placement, we had a long wait in a crowded waiting room. DSS was fully aware that I was supposed to limit contact

with other people to avoid infection, but I was never offered an alternative place to wait, a separate restroom, or any other accommodation to my medical needs.

22. In addition, I would get called up to the window to talk to a DSS worker several times during the wait. Each time, I would have to walk slowly and painfully to the window and stand while talking to the worker. At no time did anyone from DSS offer to allow me to remain seated to talk to me, despite my obvious difficulties and the workers' knowledge of my disabilities. In fact, I felt they were laughing at me whenever I was called to the window the furthest away from my seat and made to walk that distance.

23. Several times, when we returned to DSS, we were told that we had to reapply for THA. Each time, I had to fill out a new application and get updated letters from my primary care doctor. I was never given any explanation for these reapplications and my doctor got angry that she had to keep writing the same letter over and over again.

24. The initial denial of placement, the periodic moves, and the long waits at the Center all caused me harm and hardship. I was unnecessarily exposed to infection in the waiting room and public bathroom. I was always exhausted and in pain by the end of the day. My PTSD and OCD made it extremely difficult to keep moving to new places.

25. My son and I moved out of Temporary Housing into an apartment in September, 2018, with the assistance of FSL.

Dated: February 22, 2019

Mastic, New York,

Deborah K.

Sworn before me on this 22nd day of

February , 2019,

Notary Public

LINDA R. HASSBERG
Notary Public, State of New York
No. 02HA6182919
Qualified in Suffolk County
Commission Expires March 10, 2020