**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

Lance Newkirk, Dorothy W., Christopher G., on behalf of themselves and all those similarly situated,

*Plaintiffs*,

Case No. CV 19-4283

vs.

Frances Pierre, Commissioner of the Suffolk County Department of Social Services, in her official capacity,

*Defendant*.

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY A CLASS

Plaintiffs seek certification pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure for a proposed class defined as:

> All Suffolk County residents with disabilities who: (1) have applied for or will apply for Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or Temporary Assistance ("TA"), from the Suffolk County Department of Social Services ("SCDSS") since July 1, 2018 and are entitled to reasonable accommodations in the application process to participate in or benefit from these programs; and/or (2) have been found eligible for such programs and are entitled to reasonable accommodations in order to enjoy equal opportunity to participate in or benefit from them.

Plaintiffs further request that the Court appoint Plaintiffs Lance Newkirk, Dorothy W., and Christopher G. as representatives of the class.[1]

[1] In accordance with the Court's August 2, 2019 minute order granting Plaintiffs request for leave to file a corrected Complaint and Motion for Class Certification, Plaintiffs file this corrected motion for class certification, which has also been modified to conform to the Court's Individual Rules.

**PRELIMINARY STATEMENT**

Defendant Frances Pierre, as Commissioner of the SCDSS, fails on an ongoing, countywide basis to enact, implement, and enforce policies and procedures to ensure that SCDSS provides legally required accommodations to Plaintiffs and the Plaintiff class as persons with disabilities. Plaintiffs contend that this systemic failure violates Plaintiffs' well-established rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "the Rehabilitation Act"), 29 U.S.C. §§ 794–794a.[2]

SCDSS administers the SNAP, TA, and Medicaid programs and services for Suffolk County residents. SNAP provides access to food; Medicaid provides access to healthcare; and TA provides access to housing and/or income support. Plaintiffs are impoverished individuals with physical and/or mental impairments that substantially limit one or more of their major life activities. Plaintiffs rely on assistance from Defendant to help meet their most basic needs for income, nutrition, health, and shelter. Due to their disabilities, Plaintiffs require reasonable modifications to Defendant's policies and procedures to apply for, participate in, or benefit from, the public benefits and services to which they may be entitled. Simply put, absent reasonable accommodations from SCDSS, Plaintiffs are denied equal opportunity to participate in or benefit from SNAP, Medicaid, and TA.

As described in detail in the Complaint, the Declaration of Linda Hassberg ("Hassberg Decl.") and accompanying exhibits, Defendant routinely and systemically fails to effectively

---

[2] Unless otherwise indicated, references to legal mandates herein will be to the ADA. *See Castro v. City of New York*, 24 F. Supp. 3d 250, 260 (E.D.N.Y. 2014) ("'Reasonable accommodation' is 'interpreted in the same way with respect to both the ADA and the Rehabilitation Act.'") (quoting *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995)).

operationalize county-wide policies and procedures to ensure that reasonable accommodations are provided, as mandated by the ADA and Section 504. As a result, Plaintiffs and members of the proposed class have been unable to obtain, have lost, or are at imminent risk of losing benefits.

Class certification is essential to the fair and efficient adjudication of this case. Each of Defendant's failures is institutional, affecting the entirety of the class. Courts regularly certify classes in analogous situations presenting challenges to systemic government noncompliance with federally mandated civil rights protections, including those afforded to individuals with disabilities. And just as presented here, courts regularly certify classes of applicants and recipients for public benefits seeking to challenge policies that harm or burden the ability of those with disabilities to access public benefits or otherwise participate in the public welfare system. *See, e.g.*, *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 417-22 (S.D.N.Y. 2012) (certified class of individuals with disabilities in the City of New York served by the City's emergency preparedness programs and services); *Mental Disability Law Clinic v. Hogan*, No. CV-06-6320 (CPS)(JO), 2008 U.S. Dist. LEXIS 70684, at *26-38 (E.D.N.Y. Aug. 29, 2008) (certified class in ADA integration mandate challenge to failure to authorize outpatient services for individuals suffering from mental illness); *Lovely H. v. Eggleston*, 235 F.R.D. 248, 254-59 (S.D.N.Y. 2006) (certified class of welfare recipients with disabilities in challenge to new agency program providing for service delivery in only three centralized "hub" centers as discriminatory access ADA violation); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203-08 (E.D.N.Y. 2005) (certified class of persons with mental disabilities residing in adult care facility challenging restrictions on mandatory Personal Needs Allowance accounts); *Henrietta D. v. Giuliani*, No. 95 CV 0641 (SJ), 1996

U.S. Dist. LEXIS 22373, at *39-47 (E.D.N.Y. Oct. 25, 1996), *aff'd on other grounds*, *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004) (certified class of Medicaid-eligible persons with AIDS or HIV-related illnesses challenging drastic funding cuts imposed by agency and lack of reasonable accommodations that would affect meaningful access to public benefits and services).

Plaintiffs request that this Court follow suit and certify the requested class here.

## STATEMENT OF FACTS

### A. Defendant's Public Benefits Programs Have Complex Eligibility Requirements and Procedures.

As described in detail in the Complaint, SNAP, Medicaid, and TA programs and services have complex eligibility standards and requirements that applicants and recipients, including those with disabilities, must satisfy in order to participate in or benefit from these programs. *See* Compl. ¶¶ 65-78. Individuals must verify eligibility by providing documents and other proof, often from third-party sources, requiring multiple contacts with SCDSS. *See id.* ¶¶ 67-71, 73, 78. They must also complete multi-page application and eligibility renewal forms that require the recounting of evidence that they do in fact qualify for benefits under numerous criteria. *See id.* ¶¶ 67, 78. SCDSS eligibility workers may require applicants and recipients to provide third party "collateral contacts" to orally confirm household circumstances or require SCDSS home visits. *Id.* ¶ 68. Furthermore, SNAP and TA require applicants to complete a face-to-face or telephone interview with the agency. *Id.* ¶¶ 70, 73.

Applicants and recipients for TA are additionally required to comply with stringent work rules. *Id.* ¶¶ 69, 73. Similarly, unless exempted, adults must also comply with work rules

as a condition of receiving SNAP benefits and may lose their benefits for as long as two years and nine months for non-compliance. 7 U.S.C. § 2015(o)(2).

Recipients of aid under SNAP, Medicaid, and TA programs and services must periodically recertify their eligibility, which means that the household must complete a new application form, participate in another interview where required and provided updated verification and documentation on factors impacting eligibility that may have changed. *Id.* ¶ 78.

As persons whose disabilities include debilitating illnesses and physical and cognitive impairments, Plaintiffs and proposed class members often have significant difficulties in working through eligibility procedures—and later, recertification forms—absent reasonable accommodations. *See* Hassberg Decl. ¶¶ 17-18. When SCDSS fails or refuses, for example, to provide adequate notice of their right to reasonable accommodations under the ADA and Section 504, and fails or refuses to identify and treat their requests for assistance as requests for reasonable accommodations under the ADA, individuals with disabilities are adversely affected and are thus denied equal opportunity to benefit from Defendant's services. This leaves individuals with disabilities suffering actual or imminent loss of participation in or benefit from the benefits to which they are entitled, due to their inability to complete the process involved in establishing eligibility. *Id.*

### B. Defendant Systemically Denies the Rights of Each Plaintiff and Proposed Class Member in Violation of the ADA.

Defendant's failures, including failures to notify class members of their rights, to screen for access issues such as cognitive disabilities, to grieve or challenge denials, or even to properly record a recognized disability and provide ongoing accommodations on the

individual's next visit, routinely deprive Plaintiffs and the proposed class of accommodations needed to actually access benefits and services. Defendant has not extended compliance deadlines, which persons with disabilities need to complete eligibility-related tasks, and often subjects them to program sanctions, including denial or termination of benefits, despite not having provided the reasonable accommodations mandated by law to avert these adverse actions. Hassberg Decl. ¶¶ 16(a)-(b); Compl. ¶¶ 92, 129, 219-220, 225-26, 230, 235-236.

Although Defendant enacted Procedure #899, which states its purpose is to ensure that applicants and recipients of its services are "provided with any and all assistance they require while accessing [SCDSS] services," the policy includes a definition of disability that is inconsistent with federal nondiscrimination law. Compl. ¶¶ 86-88. Even worse, however, are Defendant's failures to effectively operationalize policies across its programs and services on a county-wide basis to effectively afford the protections of the ADA and Section 504 to the class. *See* Hassberg Decl. ¶¶ 17-18.

For example, Defendant failed to provide reasonable accommodations to Plaintiff Dorothy W. Ms. W. has cerebral palsy, visual impairments, and physical disabilities that make it impossible for her to read and fill out forms unless they are written in a large font. Declaration of Dorothy W., Exhibit E ("D.W. Decl.") ¶¶ 5-6. In the fall of 2018, Ms. W. contacted SCDSS to apply for the Medicaid Buy-In Program ("MBI"), a medical insurance benefit available to low-income individuals with disabilities. *Id.* ¶ 7. SCDSS responded by sending her a standard paper application in the mail, which she was unable to read and fill out due to her disabilities because it was not written in a large font. Id. ¶¶ 8-9. Ms. W. called SCDSS to explain her disability and request application materials with a large font, preferably sent electronically, or a scribe to assist with filling out the application. Id. ¶ 9. However, the

SCDSS agent with whom she spoke ignored her request and stated that this is the way SCDSS handles these applications. *Id.* ¶ 10.

As a further example, proposed class member Meesha Johnson is blind and a recipient of a kidney transplant, and she relies on Medicaid for treatment, including ongoing dialysis for her kidney transplant. Declaration of Meesha Johnson, Exhibit D ("Johnson Decl.") ¶¶ 2-3. As a result of her visual impairment, Ms. Johnson cannot read the typical benefits-related material provided by SCDSS, including notices, letters, and forms. *Id.* ¶¶ 3-4. In order to comply with the eligibility requirements and submit the proper forms for her benefits, she has repeatedly requested for SCDSS to send her materials in a format accessible to the visually impaired, but SCDSS continues to fail or refuse to do so. *Id.* ¶¶ 3-6, 10-12, 23-25. Because she could not read and fill out the forms required to recertify her eligibility for benefits, Ms. Johnson missed the deadline and lost access to Medicaid benefits. *Id.* ¶¶ 12-14. When SCDSS terminated Ms. Johnson's Medicaid coverage, she was left unable to go to the dialysis center or even pay for a physician's visit to acquire the necessary documentation to reinstate her benefits. *Id.* ¶¶ 16-18. When denying Ms. Johnson's request the first time, the SCDSS supervisor claimed that it would be a conflict of interest to assist Ms. Johnson, and that Ms. Johnson should arrange for help from someone she knows. *Id.* ¶ 5.

SCDSS routinely fails to screen for or identify applicants and recipients with potential mental health disabilities. For example, Plaintiff Christopher G., who has severe learning disabilities, has explained to SCDSS multiple times that he is unable to understand the notices he receives in the mail, and has repeatedly requested assistance with filling out forms. Affidavit of Christopher G., Exhibit E ("C.G. Aff.") ¶¶ 3, 8, 28. Nevertheless, SCDSS continues to send him written notices in the mail without providing further assistance in

understanding the information contained therein. *Id*. ¶ 27. On April 2019, he received a notice from SCDSS that his benefits were being terminated, but because he did not fully understand the notice's instructions, he failed to request an appeal within ten days of receiving the notice in order to ensure that his benefits continued pending the appeal. *Id*. ¶ 37. As a result, he did not have SNAP benefits to purchase food and could not pay his rent for May. *Id*. ¶¶ 42, 45

Plaintiff Lance Newkirk came close to losing benefits due to Defendant's failure to inform him of his right to request reasonable accommodations, as well as failing to provide accommodations when requested. Affidavit of Lance Newkirk, Exhibit C ("Newkirk Aff.") ¶¶ 5-14, 22-23, 63, 67, 69.

These are not isolated instances. They are reflective of a pattern of conduct, further exacerbated by Defendant's ongoing systemic failure or refusal to maintain adequate documentation of the reasonable accommodations provided Plaintiffs and the proposed class, or to utilize existing agency records, where available (including the actual receipt of federal disability benefits), that establish these persons' disability status. *See* Hassberg Decl., ¶¶ 17-18. Persons already previously identified as having a disability and in need of a reasonable accommodation are not flagged in Defendant's computer eligibility system in a manner that will routinely ensure that those accommodations are provided on an ongoing basis.

## ARGUMENT

### I. THE PROPOSED PLAINTIFF CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED.

Certification of a class is warranted here. Plaintiffs bear the burden of showing, by a preponderance of the evidence, that the requirements of Rule 23 are met. *See Teamsters Local*

*445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201–04 (2d Cir. 2008). This case fits squarely within established authority in the Second Circuit certifying classes in cases alleging violations of disability statutes in the administration of a public benefit or program. For example, in *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, the court certified a class of individuals with disabilities in the City of New York served by the City's emergency preparedness programs and services. 290 F.R.D. at 419-21. Similarly, *Mental Disability Law Clinic*, the court certified a class of individuals with mental illness for whom the Defendant failed to authorize public outpatient services. 2008 U.S. Dist. LEXIS 70684, at *26-38. In *Lovely H. v. Eggleston,* the court certified a class of welfare recipients with disabilities challenging a new agency program providing for program service delivery only in three centralized "hub" centers. 235 F.R.D. at 255-58. In all of these cases, like here, plaintiffs were subjected to the same discriminatory policies and methods of administration, and class certification was a highly effective method for ensuring the defendants' compliance with the law. *See also*; *Henrietta D.*, 1996 U.S. Dist. LEXIS 22373, at *39-47; *Cortigiano*, 227 F.R.D. at 203-08.

**A. <u>The Class Satisfies the Requirements of Rule 23(a)</u>.**

**1. The Class is so Numerous that Joinder of all Members is Impracticable.**

This class is sufficiently numerous. Rule 23(a)(1) requires only that the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has held that "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (citations omitted). Plaintiffs "need not establish the precise number of potential class members since courts are empowered to make common sense assumptions to

support a finding of numerosity." *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993); *accord Cortigiano*, 227 F.R.D. at 204 (numerosity requirement satisfied where plaintiffs based class size estimate on publicly available census data on adult homes, which showed numbers of residents receiving public assistance and mental health services).

Publicly available data demonstrates that significant numbers of low-income persons applying for or receiving SNAP, Medicaid or TA reside in Suffolk County. *See* Hassberg Decl. ¶¶ 7-13. According to the New York State Office of Temporary and Disability Assistance ("OTDA") Welfare Management System ("WMS"), in January 2019, Defendant received 2,745 TA applications, 2,663 for SNAP, and 3,255 for Medicaid. *See* WMS WinR 4113 Report for January 2019 (Exhibit A). WMS also reports that Defendant was providing benefits and services in 7,004 TA cases, 53,858 SNAP cases, and 65,385 Medicaid cases. *See* OTDA WMS WinR 1240 Report for January 2019 (Exhibit B).

Monthly caseload data from the OTDA identified 22,244 recipients of federal Supplemental Security Insurance ("SSI") benefits residing in Suffolk County in April 2019.[3] By statutory definition, these persons are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). SSI recipients are categorically eligible for SNAP and Medicaid. *See* 42 U.S.C. § 1383c.

[3] New York State Office of Temporary and Disability Assistance, *Temporary and Disability Statistics April 2019*, *available at*: http://otda.ny.gov/resources/caseload/2019/2019-04-stats.pdf at p. 20 (accessed on July 24, 2019).

In addition, Suffolk County identifies 283,000 individuals with disabilities living in the county. Recent U.S. census data shows 141,355 individuals with a disability residing in Suffolk County, comprising 9.5% of the county population. As of 2017, of the Suffolk County residents identified as having a disability, 6% were living at less than 50% of the poverty level; 13.3% were living at less than 100% of the poverty level; and 17.2% were living at less than 125% of the poverty level. Based on SCDSS reports and census data, it is thus reasonable to estimate that the proposed class includes thousands of individuals. Hassberg Dec., ¶¶ 10-13.

More particularly, the focus of the Rule 23(a)(1) numerosity requirement is whether the joinder of similarly situated individuals is "impracticable." "Impracticable does not mean impossible." *Robidoux*, 987 F.2d at 935; *accord MKB v. Eggleston*, 445 F. Supp. 2d 400, 440 (S.D.N.Y 2006). In addressing a challenge to unlawful delays in processing public benefits applications, the Second Circuit in *Robidoux* referenced a range of relevant factors:

> Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

987 F.2d at 936 (citations omitted). Many of these factors are present here. Given the impoverishment of Plaintiffs and the proposed class members live, the nature of their disabilities, and the lack of information as to their rights under the ADA, it is impracticable for them to each obtain private legal representation to pursue litigation separately for their individual claims. And the redundancy of multiple individual claims would certainly impact

judicial economy and burden the court. *See also Cortigiano*, 227 F.R.D. at 204-05; *Henrietta D.*, 1996 U.S. Dist. LEXIS 22373, at *40; *accord Lovely H.*, 235 F.R.D. at 256.

**2. There are Questions of Law and Fact Common to the Class.**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). As the Supreme Court made clear in *Wal-Mart Stores, Inc. v. Dukes*, "even a single [common] question will do." 564 U.S. 338, 349 (2011) (citation and internal quotation marks omitted). The test is "'not demanding' and is met so long as there is at least one issue common to the class." *Brooklyn Ctr. for Independence*, 290 F.R.D. at 418.

Commonality is routinely found to be satisfied where, as here, class members' injuries "derive from a unitary course of conduct by a single system." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997). Here, the putative class members' injuries all derive from precisely the same course of conduct of Defendant -- the systematic failure to comply with the statutory mandates of the ADA and Section 504 by failing or refusing to provide reasonable accommodations that would enable plaintiffs to obtain or maintain their benefits. Each element of the relief Plaintiffs seek is common to the class (See Complaint, Request for Relief). Common questions here include whether Defendant is:

a. failing or refusing to afford reasonable accommodations to Plaintiffs and class members that they need to participate in or benefit from SNAP, Medicaid, or TA;

b. failing or refusing to adopt and implement adequate ADA and Section 504-compliant procedures for informing consumers with disabilities of their rights to non-discrimination, and to request reasonable accommodations;

c. failing or refusing to adopt and implement adequate procedures to provide timely, adequate, written determinations of agency decisions pertaining to requests for reasonable accommodations;

d. failing or refusing to adopt and implement adequate ADA and Section 504-compliant-procedures for informing applicants and recipients with disabilities of a prompt and

equitable grievance process if their requests for reasonable accommodations or rights under the ADA and Section 504 are denied;

e. failing to sufficiently record applicants and recipients' disabilities and the status of reasonable accommodations requested and provided, both within a case and across SCDSS benefit programs, to ensure proper implementation of the rights of Plaintiffs and the proposed class under the ADA and Section 504; and,

f. failing or refusing to make available to Plaintiffs and other interested persons information regarding the provisions of the ADA and Section 504 and their applicability to persons with disabilities seeking access to benefits administered under SNAP, Medicaid, or TA, and further, to make this information available in a manner necessary to apprise these persons of these protections, including through alternative means of communication for persons with vision or hearing impairments or with cognitive disabilities that impair or prohibit comprehension of and ability to navigate program requirements.

These common questions of law and fact call into question Defendant's procedures as they apply to all members of the class. The anti-discrimination protections of Title II of the ADA and Section 504 are sweeping and unequivocal and broadly prohibit discrimination by public entities against all individuals with disabilities in the provision of benefits and services:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132; *see* 28 C.F.R. § 35.130(a). See also 29 U.S.C. § 794(a); *see* 28 C.F.R. § 41.51(a) for parallel § 504 provisions. See also *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) ("Both Title II of the ADA and § 504 of the Rehabilitation Act protect the rights of disabled individuals to participate in state-administered or funded services.").

In *Henrietta D.* the court, in certifying a class of New York City residents who had AIDS or HIV-related disease and who were allegedly deprived of certain services by the Human Resources Administration's ("HRA") Division of AIDS Services ("DAS"), noted:

> [T]he overarching issue for each of the putative class members is actually identical, that is, whether reasonable accommodation is needed to access public assistance entitlements and, . . . whether City Defendants have provided such accommodation or have violated the ADA or Rehabilitation Act.
>
> In other words, the unifying legal and factual question is whether defendants violated their legal obligations to provide plaintiffs with meaningful access, as required by the ADA and the Rehabilitation Act, to public assistance benefits and services.

1996 U.S. Dist. LEXIS 22373, at *41. The court rejected defendants' argument that commonality was defeated due to the purported need to individually assess whether plaintiffs' disabilities had been reasonably accommodated. Although "the details of each individual plaintiff's alleged injury may vary," the court concluded that there was commonality based on "plaintiffs' disability, defendants' alleged reduction of DAS and the alleged resulting denial of meaningful and timely access to public assistance." *Id.* at *42.

Similarly, in *Shakhnes v. Eggleston*, 740 F. Supp. 2d 602 (S.D.N.Y. 2010), the district court certified a class of Medicaid recipients who alleged a pattern of deficiencies, including timely processing, in the administration of Medicaid fair hearings. In response to defendants' argument that commonality was not met due to plaintiffs' alleged failure to produce evidence of systemic noncompliance with timely processing mandates for fair hearings, the court stated: "But whether there is or is not such a systemic problem is a question that supports commonality—it is a question relevant to the claims of each individual class member." *Id.* at 626. See also R. A-G v. Buffalo City Sch. Dist. Bd. of Educ., No. 12-CV-960S, 2013 U.S. Dist. LEXIS 93924, at *28-29 (W.D.N.Y. June 30, 2013) (courts "have held that the disparate impact of a challenged policy or regulation does not defeat class certification" in cases where the proposed class alleges systematic violations of federal disability laws as a result of an entity's policy), *aff'd,* 569 Fed. Appx. 41, 42 (2d Cir. 2014) ("Plaintiffs' entire case is

predicated on a policy that is applied uniformly to all students that qualify for supplemental services."); *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 418-19.

Here, Plaintiffs and the proposed class members allege that Defendant engages in policies, practices, and procedures that deny proposed class members' participation in or benefit from Defendant's programs and services to which they are eligible. Compl. ¶¶ 79-82. SCDSS has a policy that itself does not comply with the ADA and Section 504. And Plaintiffs' circumstances illustrate the systemic nature of Defendant's failures. They have all been affected by Defendant's failure to provide applicants with adequate notice of their right to ADA accommodations. Newkirk Aff. ¶¶ 68-71; C G. Aff. ¶ 47. Plaintiffs Newkirk, Dorothy W., and Christopher G. have been denied requests for reasonable accommodations. Newkirk Aff., ¶¶ 17-21; CG. Aff. ¶¶ 8-9, 11, 34-36; D.W. Decl. ¶¶ 9-10, 18-19.

All three of the named Plaintiffs have experienced challenges in applying for and recertifying benefits, as well as delays and interruptions to the receipt of benefits, due to Defendant's failure to track and update the case management system to indicate the type of accommodations needed by or already granted to the individual. Newkirk Aff. ¶¶ 25-26, 28-31, 38-46; D.W. Decl. ¶¶ 17-19; C.G. Aff. ¶¶ 7, 20-24.

Plaintiffs' claims "depend upon a common contention . . . that is capable of class wide resolution." *Wal-Mart*, 564 U.S. at 350. The relief requested is injunctive, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, requiring Defendant to comply with the Americans with Disabilities Act and Section 504. Class members' individual circumstances "need not be identical for [their claims] to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Factual disparities, if any,

regarding the *effect* of the challenged actions on class members in this context of a 23(b)(2) class are irrelevant to the determination that common questions exist. *See, generally, Brooklyn Ctr. for Indep.*, 290 F.R.D. at 418-19. Commonality is clearly met here.

### 3. The Claims of the Named Plaintiffs are Typical.

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires a showing "that the claims of the class representative parties are typical of the claims…of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when each class member's claim arises from a comparable course of events, and each class member is entitled to make similar legal arguments to prove the liability of the defendant. *Marisol A.*, 126 F.3d at 376; *Lovely H.*, 235 F.R.D. at 256. The United States Supreme Court has noted that the commonality and typicality requirements "tend to merge" because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *accord Wal-Mart*, 564 U.S. at 349 n.5.

Like the commonality requirement, typicality does not require the representative party's claims to be identical to all class members. *See Robidoux*, 987 F.2d at 936-37; *Kurtz v. Kimberly Clark Corp.*, 321 F.R.D. 482, 532 (E.D.N.Y. 2017) ("Complete symmetry between the class representative's claims and those of the absent class members" is not required.") (citation and interior quotation marks omitted); *Cortigiano*, 227 F.R.D. at 206 ("[S]light variations in how defendants treated different plaintiffs…[do] not render the claims atypical."). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."

*Robidoux*, 987 F.2d at 936-37. The typicality requirement "is not highly demanding." *Kurtz*, 321 F.R.D. at 532 (quoting *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015) (citation omitted)).

Typicality is met here because the class claims arise from the same type of illegal conduct by Defendant. Named Plaintiffs and putative class members have each applied for, are currently receiving, or will apply for SNAP, Medicaid, or TA benefits and have experienced or are at imminent risk of experiencing discrimination by the Defendant on the basis of their disabilities, including failing or refusing to provide reasonable accommodations that would enable them enjoy equal opportunity to participate in or benefit from those programs and services. Hassberg Decl. ¶¶ 18, 20, 22. In failing or refusing to provide reasonable accommodations, SCDSS also fails or refuses, on an ongoing basis, to communicate to the named Plaintiffs and absent class members the right to reasonable accommodations under the ADA, screen for and identify individuals with disabilities who might need reasonable accommodations, issue written denials of accommodation requests with adequate grounds, and provide notice of and implement a grievance process to challenge denials. Hassberg Decl. ¶¶ 17-18.

Defendant's wrongful actions and omissions have deprived Named Plaintiffs and putative class members of basic benefits and the services they need to prevent destitution. The legal theories underlying the claims for relief are identical for both the named Plaintiffs and the members of the proposed class so that all members can "benefit from the named plaintiffs' action." *Cortigiano*, 227 F.R.D. at 206 (that "all members of the class would benefit from the named plaintiffs' action demonstrates that the typicality requirement is met").

Courts have assumed the presence of both commonality and typicality where plaintiffs request certification of an injunctive class seeking injunctive and declaratory relief under Rule 23(b)(2). *See Nicholson,* 205 F.R.D. at 98-99 (citing *Marisol A.by Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *affd.*, 126 F.3d 372 (2d Cir. 1997)). As Plaintiffs demonstrate *infra*, this action is properly certified under Rule 23(b)(2).

**4. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Plaintiff Class.**

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Martinez v. Ayken, Inc*., No. CV-13-7411 (LDW)(AKT), 2016 U.S. Dist. LEXIS 25556, at *30 (E.D.N.Y. Feb. 29, 2016) (quoting *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013)). This adequacy of representation requirement is comprised of two elements: (1) the interest of the named plaintiffs must coincide with the interests of the class; and (2) class counsel must be qualified, experienced and generally able to conduct the litigation. *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000. Both elements of Rule 23(a)(4) are satisfied here. Here, the interests of the named Plaintiffs and each putative class member are coextensive. The named Plaintiffs and the putative class members each demand that Defendant comply with basic statutory and regulatory requirements of the ADA and Section 504, including the requirement that reasonable accommodations be provided to qualified individuals with disabilities. Compl. ¶¶ 28-30. Named Plaintiffs' legal claims arise from the Defendant's same illegal conduct and are applicable to the entire class. All class

members will benefit from this Court's issuance of injunctive relief sought by the named Plaintiffs that directs compliance with the mandates of the ADA and Section 504, principally including the enforcement of access to public benefits by requiring Defendant to afford reasonable accommodations to individuals with disabilities in order to assist them in navigating the eligibility requirements of, and completing the applications for, SCDSS's benefit programs. The proposed class representatives accordingly "possess sufficient interest to pursue vigorous prosecution of their claims." *Cortigiano*, 227 F.R.D. at 207.

There are no conflicts among the proposed class members and the named plaintiffs that undermine certification. In actions where members of the plaintiff class have an array of needs that could be met on an individual basis, courts have consistently held that no conflict exists where the injunctive relief sought by the class is a change in systemic policies that would continue to affect them along with the class. *See, e.g.*, *M.G. v. N.Y.C. Dep't of Educ.*, 162 F. Supp. 3d 216, 237 (S.D.N.Y.2016) (parents of students with autism challenging systemic policies that limited the scope of special education services adequately represented the class even if their individual needs for services could be met, as the injunctive relief they sought would continue to benefit them as well as the entire class); *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (Named plaintiff seeking to represent Medicaid recipients to challenge the lack of timely compliance with fair hearing decisions met the adequacy requirement. Even if she received added Medicaid benefits following her fair hearing, "[i]t is quite probable that the named plaintiff might find herself in similar situations" with the agency in the future.). Similarly here, even if the instant named Plaintiffs receive reasonable accommodations that facilitate their access to benefits, by virtue of their continuing disability and impoverished status, they would continue to benefit from systemic changes in the

provision of accommodations along with other class members as they encounter an ongoing need for assistance from SCDSS in the future.

The adequacy of counsel for the Plaintiffs and proposed class is likewise well established. Both the Empire Justice Center and the National Center for Law and Economic Justice, whose attorneys are experienced in public benefits class action litigation in federal and state courts, will vigorously and competently represent the class.

**B. <u>The Class Satisfies the Requirements of Rule 23(b)(2)</u>.**

Plaintiffs seek certification under Rule 23(b)(2). A class should be certified under this subsection of Rule 23(b) if the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In certifying the class and subclass of welfare recipients with disabilities challenging the public agency's restrictive access policies, the court in *Lovely H*. stated: "Cases of this nature, alleging systemic failure of governmental bodies to properly fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2)." 235 F.R.D. at 257; *see Henrietta D*., 1996 U.S. Dist. LEXIS 22373, at *45. Courts in this Circuit have repeatedly granted class certification pursuant to Rule 23(b)(2) in cases where the public entity's failure or refusal to act for the benefit of persons with disabilities results from institutional patterns and practices. *See, e.g., Brooklyn Ctr. for Indep.,* 290 F.R.D. at 419-420 (finding it "easily resolved" that the proposed class falls within Rule 23(b)(2), where plaintiffs alleged that defendants "failed to act to protect the interests of the class as a whole by ignoring the unique problems faced by people with disabilities").

These decisions are in accord with a longstanding line of rulings upholding Rule 23(b)(2) certification in cases seeking class-wide declaratory and injunctive relief against governmental entities. *See, e.g.*, *Finch v. N.Y. State Office of Child. & Fam. Servs.*, 252 F.R.D. 192, 202-03 (S.D.N.Y. 2008) (certifying class of child abuse appellants alleging undue delay in administrative hearings); *Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (certifying a class of disabled preschool students who had not been properly evaluated for or provided with appropriate services); *Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994) (certifying class of all New York City residents who are recipients of public assistance benefits and change of circumstance grants, where defendants' failure to process grants was said to be "institutional" and final injunctive and declaratory relief would benefit all class members in gaining timely processing).

The claims of Plaintiffs and the proposed class are all based on Defendant's systemic, institutionalized failure or refusal to ensure individuals with disabilities are given equal opportunity to participate in or benefit from SNAP, Medicaid, and TA programs and services, in violation of their rights under the ADA and Section 504. Each Plaintiff has suffered, or is at risk of imminently suffering harm in the form of delayed, denied, or terminated benefits, due to Defendant's lack of implemented policies and procedures designed to facilitate and maintain access to benefits through reasonable accommodations that will help them to comply with complex eligibility requirements and procedures. Each Plaintiff seeks declaratory and injunctive relief to remedy these violations of their rights under the ADA and Section 504.

**C. The Proposed Class is Ascertainable.**

The Second Circuit "has also 'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively

feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina***,** 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citations omitted)). Ascertainability requires that the court must be able to "determine who belongs to the class by reference to objective criteria." *Mental Disability Law Clinic*, 2008 U.S. Dist. LEXIS 70684, at *57 (citation omitted)); *see Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 293 F.R.D. 287, 299 (E.D.N.Y. 2013). The ascertainability standard "is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010) (citation omitted). The assessment does not require that every class member be identifiable prior to class certification. *Id*.

Plaintiffs seek to certify a class of applicants and recipients of benefits administered by Defendant, utilizing a specific class definition whose membership of individuals with disabilities can objectively be determined by reference to the definitions of disability under the ADA and Section 504, through a manageable and administratively feasible process.

While Plaintiffs allege that SCDSS, as overseen by Defendant, does not adequately track or document the disability status of benefits applicants and recipients in a centralized database for purposes of determining the need for reasonable accommodations, the agency does routinely obtain specific disability-related information from clients at the time of application, for eligibility purposes. Compl. ¶¶ 67-68, 135-136. Defendant uses a common application, but applications for specific benefits such as SNAP or Medicaid may also be utilized. All application forms include multiple questions regarding disability that applicants are required to answer. Hassberg Decl., ¶¶ 24-26.

The OTDA form[4] "New York State Application for Certain Benefits and Services" asks (1) at page 8, whether the applicant receives SSI or "NYS Disability" benefits and (2) at page 14, whether the applicant or anyone living in the household is "blind, sick or disabled," is "a child with a developmental disability," "[i]s or was drug or alcohol dependent," "[i]s on SSI or has ever applied for SSI," "[h]as not been able to work for at least 12 months because of a disability or illness," and "[h]as daily activity limited because of a disability or illness that has lasted or will last at least 12 months."[5] The form also asks, at page 11: "Do you or any other adult who lives with you have any medical conditions that limit the ability to work or the type of work that can be performed?"[6] Hassberg Decl. ¶ 26 . Similarly, the OTDA form "Supplemental Nutrition Assistance Program (SNAP) Application/Recertification," which is used for SNAP applications only, asks, at page 4: "Are you, and/or anyone living with you, disabled or at least age 60?" [7] Hassberg Decl. ¶ 26.

More fundamentally, both parties, as well as the Court, can readily identify each member of the proposed class with reference to the ADA statutory and regulatory definitions and rules of construction regarding disability at each stage of this litigation, from commencement of the action through discovery, to this Court's potential rulings on preliminary or permanent injunctive relief. *See Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *61 (ascertainability must be determined "at some point in the case") (citation omitted). The

[4] Pursuant to state law, OTDA is mandated to provide statewide benefits eligibility forms for use by local social services districts such as SCDSS. *See* NYCRR 18 § 320.; *see also*, NY Soc. Serv. Law § 355(2); NYCRR 18 § 350.1(b).
[5] Office of Temporary and Disability Assistance, "New York State Application for Certain Benefits and Services," LDSS-2921 (Rev. 7/16), http://otda.ny.gov/programs/applications/2921.pdf.
[6] *Id.*
[7] Office of Temporary and Disability Assistance, "Supplemental Nutrition Assistance Program (SNAP) Application/Recertification," LDSS-4826 (Rev. 2/18), http://otda.ny.gov/programs/applications/4826.pdf.

ADA definition of disability, 42 U.S.C. §§ 12102(1)-(3), is accompanied by statutory rules of construction which construe the definition "in favor of broad coverage of individuals under this Act." *Id.* § 12102(4)(A). The term "major," as part of the "major life activity" component of the statutory definition, shall not be interpreted strictly to create a demanding standard." 28 C.F.R. § 35.108(c)(2)(i) (Dept. of Justice regulations). The "major life activity" assessment "is not determined by reference to whether it is of central importance to daily life." *Id.* § 35.108(c)(2)(ii); *see id.* §§ 35.108(d)(1)(i),(iii)-(viii) (similar rules of construction mandating expansive coverage of the "substantially limits" component of the disability definition). The DOJ regulatory rules of construction "are intended to provide for more generous coverage and application of the ADA's prohibition on discrimination through a framework that is predictable, consistent, and workable for all individuals and entities with rights and responsibilities under the ADA." *Id.* § 35.108(d)(2)(i).

DOJ regulations make clear that the crucial assessment under Title II of the ADA is whether the public entity is in compliance with the non-discriminatory mandates of the statute, not whether an individual seeking protection under the Act is in fact disabled:

> The primary object of attention in cases brought under title II of the ADA should be whether public entities have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis.

*Id.* § 35.108(d)(1)(ii).

Accordingly, the determination of Plaintiff class members who have disabilities and who are entitled to coverage under the ADA is both expansive and liberally construed. Ascertaining class membership will not be administratively difficult. The Court will not be

enmeshed in "subjective issues such that determining class membership would require a mini-hearing on the merits of each case." *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *62 (footnote, citations, and interior quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this proposed class be certified pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

Dated: August 6, 2019

Respectfully submitted,

*/s/ Marc Cohan*

NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
Greg Bass
Marc Cohan
Travis W. England*
Jen Samantha D. Rasay*
275 Seventh Ave, Ste. 1506
New York, NY 10001
Tel. (212) 633-6967
bass@nclej.org
cohan@nclej.org
england@nclej.org
rasay@nclej.org

EMPIRE JUSTICE CENTER
Linda Hassberg
Touro Law Center PAC
225 Eastview Drive, Room 222
Central Islip, NY 11722
Tel. (631) 650-2305
LHassberg@empirejustice.org

*Attorneys for the Plaintiffs*

* *Application for admission forthcoming.*