
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
LANCE NEWKIRK, DOROTHY W., and
CHRISTOPHER G., on behalf of themselves, and
all those similarly situated

                           Plaintiffs,

                         -against-

FRANCES PIERRE, Commissioner of the Suffolk
County Department of Social Services, in her
official capacity

                         Defendants.
------------------------------------------------------------ x

**REPORT & RECOMMENDATION**

19-cv-04283 (NGG)(PK)

**Peggy Kuo, United States Magistrate Judge:**

      Plaintiffs Lance Newkirk, Dorothy W., and Christopher G., on behalf of themselves and all those similarly situated, brought this action against Defendant Frances Pierre, Commissioner of the Suffolk County Department of Social Services, seeking declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1974 ("Section 504"), 29 U.S.C. § 794. ("Compl.," Dkt. 1.)

      On referral from the Honorable Judge Nicholas G. Garaufis is Plaintiffs' Motion to Intervene Tara V. as a named Plaintiff in this matter. (The "Renewed Motion," Dkt. 62; Dkt. Order Dated Oct. 2, 2020.) For the reasons below, the undersigned respectfully recommends that the motion be granted.

## BACKGROUND

### I. Factual & Procedural History

#### A. The Amended Complaint

      Plaintiffs filed the Complaint and Motion for Class Certification on July 25, 2019, and filed an Amended Complaint ("Am. Compl.," Dkt. 9) and an Amended Motion to Certify a Class ("Am. Class Cert. Motion," Dkt. 10) on August 7, 2019. The Amended Motion to Certify a Class was referred to

1

Magistrate Judge Steven M. Gold on January 31, 2020. (Dkt. Order Dated Jan. 31, 2020.) On February 11, 2020, the parties filed a joint stipulation of dismissal as to Plaintiff Dorothy W. (Dkt. 30.)

The Amended Complaint seeks relief on behalf of a class of "impoverished individuals with physical or mental disabilities who reside in Suffolk County and have applied for or are receiving benefits and services from the Suffolk County Department of Social Services ("SCDSS") to meet their basic needs for nutrition, health care, income, and shelter." (Am. Compl. ¶ 1.) The Amended Complaint alleges that Defendant's failure to provide reasonable accommodations and advise class members of their right to request reasonable accommodations in obtaining, maintaining, and recertifying eligibility for public assistance benefits violates the ADA. (*See generally*, Am. Compl.) The Amended Complaint seeks permanent declarative and injunctive relief ordering Defendant to provide reasonable accommodations to class members to ensure their access to public assistance.

The Amended Complaint alleges that class members face various procedural challenges that "include, but are not limited to:

> a. Traveling to and standing in line at the SCDSS office due to mobility impairments, which requires being allowed to transact case-related activities by telephone, mail, facsimile, email, or through home visits and/or having SCDSS workers come out to sit and speak with benefits recipients with mobility impairments workers;
>
> b. Reading or completing written forms due to blindness or serious visual impairment, which requires assistance from SCDSS office workers or the conversion of written materials into alternate formats, such as Braille, large font, audio recordings, or electronic formats that are compatible with assistive reading technology;
>
> c. Reading and understanding written notices or completing written forms due to mental or cognitive impairments, which requires assistance from SCDSS office workers with clarifying eligibility questions and other benefits-related information;
>
> d. Obtaining third-party verification documentation, which requires assistance from SCDSS workers with notifying third-party sources and compiling relevant documentation;
>
> e. Communicating orally by telephone or in person due to deafness or being hard of hearing, which requires communication through the use of American Sign Language or other interpreters, or assistive listening technology such as captioning or third-party relay operators."

(*See* Am. Compl. ¶ 80.) Most of the allegations in the Amended Complaint concern these procedural impediments to the class's access to public assistance benefits. The Amended Complaint also references substantive reasonable accommodations, alleging that individuals with disabilities require reasonable accommodations for disabilities related to "[i]nteracting with others, including … being assigned a temporary housing placement with few or no roommates." (Am. Compl. ¶ 98d.)

### B. The Named Plaintiffs

The Amended Complaint alleges that the named Plaintiffs illustrate the challenges faced by the class, including "difficulty with a number of tasks related to accessing and maintaining eligibility for" public assistance benefits. (Am. Compl. ¶ 80.) For example, Plaintiff Christopher G. alleges that he has a cognitive learning disability that makes applying for and renewing his benefits extremely challenging. (Am. Compl. ¶¶ 9, 211-240.) Christopher G. asked SCDSS for "assistance with filling out benefits-related forms" and explained to SCDSS that "he is unable to understand the notices he receives in the mail," but SCDSS did not provide assistance in filling out or understanding these forms and notices. (Am. Compl. ¶¶ 9, 211-226; *see also id.* ¶ 127 (alleging that SCDSS procedures for approving reasonable accommodation were not followed for Christopher G).) SCDSS also failed to properly track Christopher G.'s requests for reasonable accommodations, further impeding his access to benefits. (Am. Compl. ¶¶ 139-142.)

Similarly, Plaintiff Newkirk, "who walks with the assistance of a cane," was allegedly denied a reasonable accommodation when forced to stand in line or sit for hours at SCDSS, despite the physical pain these extended waiting periods caused him. (Am. Compl. ¶ 109.) Newkirk requested reasonable accommodations that would allow him to avoid these prolonged, painful waiting periods when applying or reapplying for benefits, but those requests were initially ignored. (Am. Compl. ¶¶ 109, 149-177.) Although SCDSS eventually agreed that Newkirk could avoid waiting in line if he called SCDSS before arriving, the accommodation was inconsistently enforced across SCDSS centers, which

has impeded Newkirk's access to benefits. (Am. Compl. ¶ 138.)

Former named Plaintiff Dorothy W., who has visual impairments, mobility restrictions, and suffers from myoclonic tremors, also allegedly experienced difficulties in applying for benefits and was similarly denied reasonable accommodations. (Am. Compl. ¶¶ 178-210.)

### C. Tara V.'s Proposed Intervention and Temporary Housing Assistance

On July 24, 2020, Plaintiffs sought to have Tara V. intervene as a Plaintiff in this case and filed a Motion for an Order to Show Cause. (The "Motion," Dkt. 43 at 1.) In her declaration filed in support of the Motion, Tara V. describes the substantial challenges she and her daughter faced in securing from SCDSS temporary housing assistance that met Tara V.'s medical needs. (Dkt. 43-1, Decl. of Tara V.) Because of her disabilities, Tara V. averred that she "cannot live in close proximity to others and cannot share living spaces like kitchens and bathrooms." (*Id.* ¶ 5.) SCDSS did not inform her of her right to make a request for reasonable accommodation for housing that met her needs. (*Id.* ¶¶ 7, 13.) Additionally, although Tara V. and her daughter needed stable, self-contained housing, SCDSS frequently moved them into different housing and sometimes provided housing with shared facilities. (*See id.* ¶¶ 11, 15-22, 25-36.)

The Motion sought expedited consideration of Tara V.'s Motion to Intervene, and also sought a Temporary Restraining Order or Preliminary Injunction ("TRO/PI") requiring Defendant to provide Tara V. with temporary housing that met her needs. (Dkt. 44; "Plaintiffs' Memo of Law," Dkt. 43-13 at 6-12.) Defendant opposed the Motion (Dkts. 46-50), and Plaintiffs filed a Reply in support (Dkts. 51-53).

On the same day that Plaintiffs filed the Motion, a Fair Hearing was held before a New York State administrative law judge ("ALJ") to decide whether the temporary housing placement SCDSS had provided Tara V. was adequate. (Dkt. 52 ¶ 4; Dkt. 46-1 at 3.) On July 29, 2020, in a "Decision After Fair Hearing," the ALJ found that SCDSS had not made a correct determination as to Tara V.'s

4

temporary housing and directed SCDSS "to always place [Tara V.] elsewhere other than a shelter with any 'shared living space'" and to "explore the possibility of placing [her] in a motel instead in order to reasonably accommodate her disabilities." (Dkt. 52 ¶ 5; Dkt. 46-1 at 14-15.)

Judge Garaufis held a hearing on the Motion on August 5, 2020, and, with respect to the portion of the Motion that sought a TRO/PI, directed Plaintiffs to advise the Court on Tara V.'s "housing accommodation, and whether it provide[d] the necessary reasonable accommodations." (Minute Entry Dated Aug. 7, 2020.) Judge Garaufis reserved ruling on the Motion to Intervene pending resolution of the Amended Motion to Certify a Class.

On August 10, 2020, Plaintiffs' counsel informed the Court that SCDSS had provided Tara V. with a reasonable accommodation that met her housing needs and withdrew their request for a TRO/PI. (Dkt. 57 at 1.) Plaintiffs did not withdraw their request for Tara V.'s intervention and sought reimbursement for four nights of motel expenses incurred while Tara V. waited for SCDSS to provide her with housing that met her needs. (Dkt. 57 at 1.)

On August 11, 2020, Magistrate Judge Gold issued a Report and Recommendation that recommended granting the Amended Motion to Certify a Class. (Dkt. 58.) On August 26, 2020, Judge Garaufis adopted Magistrate Judge Gold's Report & Recommendation and certified a Rule 23(b)(2) class. (Dkt. 60.) The class consists of

> All Suffolk County residents with disabilities who: (a) have applied for or will apply for SNAP, Medicaid, or TA from SCDSS since July 1, 2018, and are entitled to reasonable accommodations in the application process to participate in or benefit from these programs; and/or (b) have been found eligible for such programs and are entitled to reasonable accommodations in order to enjoy equal opportunity to participate in or benefit from them.

(Dkt. 60 at 27.) Judge Garaufis directed Plaintiffs to advise the Court whether they still sought to have Tara V. intervene as a named Plaintiff. (Dkt. Order Dated August 26, 2020.) Plaintiffs informed

5

the Court that they still sought permission for Tara V. to intervene. (Renewed Motion.)[1] Judge Garaufis referred the Renewed Motion to Judge Gold for a report and recommendation. (Dkt. Order dated Oct. 2, 2020.) This case was reassigned to the undersigned on January 8, 2021. (Dkt. Entry dated Jan. 8, 2021.)

Since filing the Renewed Motion, the parties have engaged in settlement discussions. (*See* Dkts. 67, 70.) The parties' March 9, 2021 status report stated that they had "made significant strides toward settlement of this matter." (Dkt. 70 at 1.)

The parties appeared before the undersigned at a Motion Hearing on April 6, 2021, at which oral argument was held on the Renewed Motion. (*See* Minute Order dated Apr. 7, 2021.)[2]

## II.   Discussion

Plaintiffs seek to have Tara V. intervene pursuant to Federal Rule of Civil Procedure 24(b), which governs permissive intervention. "Permissive intervention … is discretionary with the trial court." *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). "A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(2)). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. Pro. 24(b)(3)). "Additional relevant factors 'include whether parties seeking intervention will significantly contribute to full development of the underlying factual issues

---

[1] Plaintiffs did not renew their request for reimbursement of the four nights Tara V. spent at a motel while awaiting her temporary housing placement, and that request is not before the undersigned.

[2] Although the undersigned stated a recommendation that the Renewed Motion be denied (Motion Hearing Tr. at 25:21-22), for the reasons below, the undersigned has *sua sponte* reconsidered that oral recommendation.

6

in the suit and to the just and equitable adjudication of the legal questions presented.'" *H.L. Hayden Co.*, 797 F.2d at 89 (quoting *Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir.1977)).

Timeliness "defies precise definition." *Pitney Bowes*, 25 F.3d at 70. "Generally, the court's analysis must take into consideration the totality of the circumstances." *Holocaust Victim Assets Litig.*, 225 F.3d at 198 (citations omitted). Among the factors the Court may consider are how long the applicant had notice of her interest in the action before making the motion, and the prejudice to the existing parties resulting from any delay. *Id.* Tara V. has stated that she only became aware of the litigation shortly before she originally moved to intervene in July 2020. (Tara V. Decl. ¶ 24.) Defendant has not argued that the motion to intervene is untimely. Even taking into account the time that has elapsed since the motion was filed, fact discovery in this case is still ongoing, with a deadline of September 21, 2021. (Apr. 6, 2021 Dkt Order.) Accordingly, the undersigned finds that the motion to intervene is timely. *See, e.g.*, *Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 359 (S.D.N.Y. 2018) (finding motion to intervene timely where plaintiff was not "attempt[ing] to intervene at the eleventh hour"); *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, No. 08-CV-5093 (HB), 2010 WL 5222127, at *3 (S.D.N.Y. Dec. 22, 2010) (finding motion to intervene as of right timely where, among other things, discovery was ongoing).

Tara V.'s claims share common questions of law and fact with the main action. *See* Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs describe Tara V.'s claims as alleging

> that Defendant has violated the statutory mandates of [the ADA] and Section 504 of the Rehabilitation Act … by systematically failing to provide reasonable accommodations that would enable her to obtain or maintain her benefits. Additionally, Tara V. claims that Defendant has failed or refused to adopt and implement procedures: for informing benefits applicants and recipients with disabilities of their rights to non-discrimination and to request reasonable accommodations (Tara V. Decl. ¶ 7); to provide timely, adequate, and written determinations of agency decisions pertaining to requests for reasonable accommodations (*Id.* at ¶¶ 13, 18); and for informing benefits applicants and recipients with disabilities of a prompt and equitable grievance process, if their requests for

7

reasonable accommodations are denied. (*Id.*)

(Plaintiff's Memo of Law at 8 (citations in original).) These claims share common questions of law and fact with the main action because, similar to the named Plaintiffs, Tara V. has a disability and needed reasonable accommodations to have meaningful access to benefits (in her case, housing benefits), but faced challenges in obtaining or maintaining them (because she was not informed of her right to request them or appeal their denial). (Decl. of Tara V. ¶¶ 5, 7, 13, 18; *see also* Am. Compl. ¶¶ 9, 211-226 (Christopher G.) and ¶¶ 109, 149-177 (Newkirk).) Tara V., like the named Plaintiffs, also was not provided the reasonable accommodations she needed. (*See* Am. Compl. ¶ 127 (Christopher G.), ¶¶ 109, 148-177 (Newkirk).)

Furthermore, the accommodation Tara V. sought because of her disabilities—that she not share living spaces with others (Tara V. Decl. ¶ 5)—is among those described in the main action. The Amended Complaint includes allegations that Defendant failed to provide individuals with certain disabilities reasonable accommodations relating to "[i]nteracting with others, including … being assigned a temporary housing placement with few or no roommates." (Am. Compl. ¶ 98d.) The facts giving rise to the intervenor's claims do not need to be identical to those in the main action for this requirement of Rule 24(b) to be satisfied. *See, e.g.*, *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989) (Rule 24(b)(2) is "satisfied where a single common question of law or fact is involved, despite factual differences between the parties.")

The undersigned finds that Tara V.'s claims share common questions of law and fact with the main action and therefore she meets the second requirement for permissive intervention.

Defendant's sole argument concerning undue delay or prejudice had been that allowing Tara V. to intervene would delay determination of the then-pending Amended Motion to Certify a Class. (*See* Dkt. 50 at 4.) However, because that motion has now been decided, it is no longer a source of potential delay. Defendant conceded at oral argument that there is no delay or prejudice. (Tr. at

8

15:22-23 ("Really delay is not a big factor at this point"); 16:4 ("I would not say there's prejudice."))

Moreover, while Tara V.'s situation is not identical to that of the other named Plaintiffs, she "does not raise any new claims nor does [she] change the scope or nature of the case." (Renewed Motion at 1.) Indeed, Plaintiffs' counsel stated at the Motion Hearing that issues raised by Tara V. are already being considered in settlement discussions. (Tr. at 19:3-8; 31:22-32:7.) *See Residential Capital*, 2010 WL 5222127 at * 3 (finding under intervention as of right standard that there was no prejudice or undue delay "[s]ince the claims that would be added are essentially more of the same…"). Thus, there is no prejudice and no risk of delay by allowing Tara V. to intervene.

Plaintiffs also contend that allowing Tara V. to intervene may "significantly contribute to full development of the underlying factual issues in the suit," *see H.L. Hayden Co.*, 797 F.2d at 89, because her case "can provide the Court with additional details regarding Defendant's systematic failures under the ADA and Section 504, particularly in how they affect applicants and recipients of THA benefits." (Plaintiffs' Memo of Law at 11-12.) *See also Lovely H. v. Eggleston*, No. 05-CV-6920 (LTS)(AJP), 2006 WL 3333084, at *3 (S.D.N.Y. Nov. 16, 2006) (granting permissive intervention where "although [proposed intervenors' claims] have not been the focus of the litigation to date, [their] claims regarding the alleged denial of reasonable accommodations at local Job Centers have been part of the Complaint since the inception of this litigation.")

Defendant argues that, notwithstanding the lack of prejudice, Tara V.'s "presence as a plaintiff really will not add anything to the prosecution of this case or even the settlement of this matter." (Tr. 16:4-7; *see also* 17:10-11.) Defendant contends that if Tara V.'s claims are deemed to be similar to those of the class, she "would be a member of the class and she would derive the benefits of class membership." (Tr. at 15:11-14.) Defendant also described Tara V. as "a difficult person to deal with at the motels and housing facilities" and "not a stable person" (Tr. at 15:1-2; 16:19-20), arguing that Tara V.'s purported "bad behavior" should bar her from intervening in this action because she is not

9

an adequate class representative. (*See* Dkt. 50 at 5, 8-9.)

Because Tara V.'s intervention in this case would, in effect, make her a class representative, it is appropriate to consider whether she would be an adequate class representative. In addition to the qualifications and capabilities of plaintiff's lawyers, "[d]etermination of adequacy typically 'entails inquiry as to whether: … plaintiff's interests are antagonistic to the interest of other members of the class….'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000)). Tara V. meets the qualifications to be a member of the certified class, and Defendant has not identified how her interests are antagonistic to the interests of other members of the class. Moreover, her purported difficulties alone do not disqualify her from being an adequate representative of the certified class in this case. *See, e.g., Brown v. Kelly*, No. 05-CV-5442 (SAS), 2007 WL 1138877, at *2 (S.D.N.Y. Apr. 16, 2007) ("…given the makeup of this putative class—primarily homeless people panhandling for subsistence—the fact that individuals have suffered from mental illness and/or drug addiction is not relevant to their adequacy to act as class representatives"). "Only a fundamental conflict will defeat the adequacy of representation requirement." *Guadagna v. Zucker*, 332 F.R.D. 86, 96 (E.D.N.Y. 2019) (quoting *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *11 (E.D.N.Y. Jan. 19, 2012)). No such conflict exists here. Defendant makes no argument as to the adequacy of Tara V.'s attorneys, who already represent the named Plaintiffs in this matter. Defendant's adequacy arguments are, therefore, unpersuasive.[3]

Finally, Plaintiffs argue that they have a strong interest in having Tara V. intervene in order to

---

[3] Defendant also seems to argue that Tara V.'s claims are not typical of the class. (Tr. at 14:12-14; *see also* Tr. 13:17-19 ("the factual scenario involving Tara V. is distinguishable from that of the class itself as well as Mr. Newkirk and Mr. G.")) However, as already noted in the adopted Report and Recommendation regarding the Amended Motion to Certify a Class, "typicality is not a 'highly demanding' requirement." (Dkt. 58 at 21 (citation omitted).) "[M]inor variations in the fact patterns underlying individual claims" (*id.*) will not defeat a finding of typicality, and while Tara V. presents an issue that appears in only one paragraph of the Amended Complaint, there is no indication that this issue threatens to redirect the focus of the litigation.

have "a sufficient number of named plaintiffs that represent different types of accommodation needs and experiences." (Tr. at 19:18-20.) They state that "there is a general risk that individual named plaintiffs could become unable to serve as class representatives," and that "Tara V. is willing and able to serve in this role." (Renewed Motion at 1.) While this is framed as a general, rather than a specific risk, it is nevertheless real given that the class representatives are disabled and face challenges in obtaining and maintaining benefits; indeed, original named Plaintiff Dorothy W. has already been dismissed from this action. (Dkt. 30.) *See, e.g., McNeill*, 719 F. Supp. at 251 (granting intervention where "there is a real possibility in this case, as in any benefits dispute, that all the named plaintiffs will be forced by their own personal circumstances to settle their individual claims during the course of prolonged litigation.") Given that there is no prejudice to Defendant or the risk of undue delay, this is a sufficient reason to justify intervention.

In light of all these circumstances, the undersigned respectfully recommends that the Court exercise its discretion and grant the motion to intervene.

## III. Conclusion

For the foregoing reasons, the undersigned respectfully recommends that the Renewed Motion be granted and Tara V. be permitted to intervene. The undersigned also *sua sponte* respectfully recommends that the caption in this case be amended to remove Dorothy W. and to add Tara V.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         May 8 2021